this morning. It's Turnage against Dart. May I begin? Mr. Morrissey. May it please the court. My name is Patrick Morrissey and I represent the plaintiff appellate Damon Turnage. In this case, the district court erred by dismissing this case for failure to exhaust available administrative remedies regarding the incident that occurred on September 21st, 2016. The district court erred because the plaintiff complied with the jail's internal requirements about a fall that occurred about an incident that occurred on September 21st. Six days after this fall at the Cook County Jail, the plaintiff filed a grievance and it was collected on September 27th by the Cook County Jail. The jail responded to this grievance on October 13th. In the same day, the plaintiff filed an appeal to this grievance response. And by the end of October, the plaintiff received a response from the jail to his appeal. The evidence in this case shows that the plaintiff complied with the jail's internal requirements and the jail failed to put forth any evidence that the plaintiff was required to submit a grievance prior to being injured on September 21st, 2016 when he was placed in a cell in the Cook County Jail and was allegedly not accommodated because he was not providing a lower bunk for his accommodation. The plaintiff therefore respectfully requests that this court reverse the judgment of the district court concerning the plaintiff's incident on September 21st, 2016 when he fell and remand this case to the district court for further proceedings. If the court has any questions, otherwise, I'd like to reserve my time for rebuttal. Thank you, counsel. Ms. Davenport. Thank you, Ms. Davenport. Thank you. If it may please the court, my name is Elaine Davenport on behalf of defendants. This case involves a discreet and acute act that occurred on 30 August 2016 in which plaintiff's cellmate rejected plaintiff's low bunk permit issued by the jail. This is a singular event, an acute wrong that resulted in the accrual date of 30 August 2016 for plaintiff to file his grievance to be in compliance with the rules of the Cook County Jail. Ms. Davenport, the fundamental question I have is why it doesn't suffice to file a grievance within the allotted time from the accident. If you think about tort law, the normal doctrine is there is no tort without injury. The injury is the injury suffered in the fall and that's what's being complained about here. Suppose Jones drives recklessly fast every day and on the 30th day, he hits somebody else. When does the time to file a lawsuit begin? It begins on the day of the accident, not on the day, the first day of reckless driving. The question I have for you is why the time to file a grievance doesn't work the same way. Yes, your honor. I think the difference in this case is there's no requirement that plaintiff actually have a physical injury in order to grieve a wrong that he's facing at the jail. There are numerous situations that detain him. Counsel, I don't think you're getting the basis of my question. As I see this litigation, it is about the injury suffered in the fall, not about the risk of injury that happened earlier. It's about the actual injury and there was a grievance about the actual injury, even if there was no grievance about the earlier risk of injury. That's why I'm asking a question the way I'm asking it. I understand judge and I apologize if I'm proverbially missing the boat. However, my mind cannot disconnect the actual acute event of August 30th, 2016 from the requirement to grieve under the PLRA. If one looks at the thrusting point and purpose of the PLRA, finding that plaintiff had to actually fall out of his bed before he grieves negates every purpose behind the PLRA. The Supreme Court had made it very clear that the purpose of exhaustion is to give prison officials an opportunity to address the claims. Because plaintiff feels he needs to actually fall down, it removes from the jail's ability to redress these kinds of harms. That does not serve its purpose under the PLRA, either to the jail or to the detainees. As a matter of fact... Mr. Havencourt, on this record, to say the plaintiff feels that he has to wait until he falls down to bring it, I don't think accurately characterizes what happened here. Because here in May, he had been complaining and filing grievances about the failure to enforce the lower bunk permit and nothing happened. And so, as he said here in his testimony, well, because nothing happened before, he figured, why bother now that I'm in a new cell? They didn't do anything before, so I'm not going to start filing grievances about the failure to enforce the lower bunk because they didn't do anything before. So, I think that characterization that he kind of waited is a little bit unfair here because he had been trying to do something about it earlier. Yes, Judge, if I may address that. I think the difference factually in our case is that I will call that more of an isolated incident. Plaintiff did fall in May. He did grieve it or attempt to grieve it, failed to appeal it, but then we have a prolonged period of time where there are actually no complaints about him by being improperly bunked, so to speak. As a matter of fact, when he does file his grievance, which plaintiff cites to dated August 8, 2016, the only thing he talks about in that grievance is not the fact that he's being improperly bunked in that initial grievance. The only thing he complains about is failure to get medical care from that fall. So, I think the record is not one that would indicate a continual complaint or continued wrong, and I think what happens then on August 30, 2016, is then plaintiff is now faced with a new tier, a new location, a new cellmate, which then presents a new fact that plaintiff is now presented with a conversation where he's told, okay, I have the low bunk, and he's then told at that moment, no, it's not going to happen for you today, and he's aware that he's being wronged at that specific moment. But why do we look at the grievance here as a failure to enforce the permit versus, to use your words that you just said about May, an isolated incident, namely the fall where he hurt himself? Well, Judge, when I say isolated incident, I'm not talking specifically about the fall, but that period of time where he was improperly housed. But why don't we look at this, given the way the grievance is written, where he talks about the fall, why don't we look at this as the incident that he has to complain about within 15 days as the fall itself, as opposed to the failure to enforce the permit over a period of time? And we're specifically talking about the September fall, correct? Correct. Judge, I will say that the difference is the fact that the fall itself, I don't think, is what is the crux of the wrong that is actually happening. It is one of the ramifications of the wrong, but the actual wrong is the fact that he is well aware on 30th August 2016, that he's being denied access to a permitted bunk access. And that is inseparable from the risk that he suffers because of that access. Whether he falls or not, let's say he theoretically never falls, but he has to be forced on the top bunk. The position would then have to be, under plaintiff's analysis, that he theoretically never has to file a grievance and it never has to be repaired until maybe four years later he actually falls. I don't think that's the purpose behind the PLRA. I think that would actually defeat the goal of the PLRA, which is to put detainees and the jail in the best possible position to correct wrongs prior to them escalating or compounding. I'll also say plaintiff's analogy of a failure to provide medical treatment shows the disconnect between the analysis, I believe, in our case and those types of cases. Those types of cases involve, at least how I'm  interpreting this, those all include injuries that are compounding and changing everyday nature and therefore re-triggering a new type of treatment that has to be rendered. It's a continuous wrong that's triggering continuous duties and obligations on behalf of the sheriff or the facility in that particular case. We don't have that in our case. We have a specific single discrete wrong that can be readily addressed, which is the whole purpose of the PLRA. It can be readily addressed. Plaintiff was well aware of his risk of going to the top bunk and the difference in our case is the next day his harm is still the same. He's at risk for something happening. The third day is the same. It's at risk. It doesn't have that fluctuating injury. You're actually stating the basis of my initial question. Being in the top bunk posed a risk. Actually falling out posed a different kind of harm. Let's suppose this were reversed. Let's suppose that Turnage had filed a grievance about being in the top bunk, had lost, a month later had fallen out and seriously injured himself and had not filed a new grievance. Would the sheriff concede that he didn't need to file a new thing? I would say this and it's a really difficult question because I think that changes our case. It makes things it makes things into a different. That's why it's called a hypothetical question. I'm just yes judge. I just don't want to make like an official position, but I will say this judge based on that argument hypothetically in answer to that. I think it does change things if plaintiff grieves because he says his cellmate did not let him have access to the bottom bunk and he ends up, you know, he grieves. He says he's on the top bunk and then ultimately through the whole grievance process. It is denied for whatever reason. But again in this case just so it is clear. I'm well aware of the difference between this case and my question. Please deal with my question. Yes, sir. I think it would change the argument today because of the fact that the jail is then more on notice. He actually did grieve it and then the fact that the core complaint the core allegation of the fact that he's complaining that his cellmate denied him that bad still stays the same. So I think that would change the argument that we're here for today. Not sure you've answered my question. Are you conceding that under the circumstances that I hypothesized the sheriff would say there was no need to file another grievance after the prisoner actually fell out of bed? I would hypothetically have to say it would change this case and lean it more towards. Yes, it would have been properly grieved. Thank you very much counsel. Anything further? Mr. Morrissey. I have no further your honor. If the court has any additional questions available. I see and hear none. So the case is taken under advisement. Thank you. Thank you. Our next.